IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| AMANDA ALLISON, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | |
| LAMAR UNIVERSITY, a member of § | |
| the Texas State University System § | |
| § | |
| *Defendant.* § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

NOW COMES Amanda Allison, Plaintiff in the above-styled and numbered cause, and files her Original Complaint against Defendant Lamar University. Plaintiff would respectfully show the Court the following:

**I. THE PARTIES**

1.1   Plaintiff Amanda Allison ("Plaintiff," or Plaintiff Allison" or "Allison") is an individual residing in Orange County, Texas.

1.2   Defendant Lamar University ("Defendant," "Lamar," "the university," or "Lamar University") is an arm or instrumentality of the State of Texas, and is a public university organized under the laws of the State of Texas. Defendant may be served by serving Dr. Jaime R. Taylor (hereafter, "President Taylor") in his capacity as President of Lamar University, Office of the President, Lamar University, P.O. Box 10001 Beaumont, TX 77710.

**II. JURISDICTION AND VENUE**

2.1   This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiff's causes of action is created by federal law, specifically Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

2.2    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiff's claims accrued in Jefferson County, Texas, which is within this district and division.

### III.  FACTUAL BACKGROUND

### A.    OVERVIEW

3.1    Plaintiff Allison was a full-time Instructor of Space Sciences in the Department of Earth and Space Sciences at Lamar University, a component institution of the Texas State University system. She was among the most popular instructors at the university, widely known for her energetic and Socratic teaching style. Her Space Science and Space Exploration classes routinely filled to capacity, and her formal annual evaluations reflected her sensation as an instructor, with Allison having always received "satisfactory" ratings.

3.2    Despite Allison's teaching success, Defendant Lamar University, through Department of Earth and Space Sciences administrators Dean Lynn Maurer ("Dean Maurer" or "Maurer") and Department Chair Joseph Kruger ("Chair Kruger" or "Kruger"), decided to abruptly end Allison's career at Lamar by non-renewing her appointment and depriving her of summer classes she was scheduled to teach and which had already filled with students. It did so without providing any rationale beyond "departmental needs." Although Defendant Lamar University, through Dean Maurer, provided no real reason for Plaintiff's non-renewal, it was clear to Plaintiff that her non-renewal was a final act of retaliation against her after years of hostility, bullying, sexual harassment, labeling her a conspiracy theorist, infringing on her Academic Freedom, and other retaliatory acts against her by Chair Kruger and others. Even after Lamar University ended her employment and deprived her of teaching the summer classes and the associated extra pay she was already scheduled for, the university continued to exude hostility towards her, attempting to

block her ability to take money out of her retirement account, denying her any formal procedural due process for appealing the non-renewal, and denying her appeal regarding Chair Kruger's negative comments in her annual evaluation (long after she had already been dismissed), in retaliation for her filing a formal grievance over her non-renewal.

**B.     BACKGROUND AND EVENTS RELEVANT TO ALL CAUSES OF ACTION**

**Joseph Kruger begins his campaign of sexual harassment and retaliation against Plaintiff**

3.3     Plaintiff Allison began her career at Lamar University in 2013 as an adjunct faculty member, teaching a full-time load of classes. Ten years later, in Fall 2023, Allison was hired as a full-time, term-contract Instructor. Prior to Kruger becoming chair of the department, Kruger was a faculty member while Plaintiff was still an adjunct, and the two of them shared an office. During that time, in or about 2019, Kruger, while contemplating a divorce from his wife, told Plaintiff in their shared office "You know, you are a beautiful woman." Plaintiff was repulsed by the comment and quickly exited the office.

3.4     Soon after Kruger's comment on Allison's appearance, or "beauty," Kruger became Chair of the department. He quickly began a multiyear and increasingly severe campaign against Plaintiff Allison wherein he attempted to use his new administrative power over her to retaliate against Plaintiff Allison for rebuking his prior sexual advance. He attempted to force Allison out by creating a hostile work environment and portraying her as not being valuable to the department, making it clear that he did not feel Plaintiff belonged there. Chair Kruger routinely referred to Allison as "just an adjunct," and intentionally held department meetings at times he knew she was teaching, so she would be unable attend. Chair Kruger told Plaintiff to look for another job, and regularly declared to her that he intended to "squash" the Space Sciences minor, which she oversaw.

**Chair Kruger escalates the hostile work environment against Plaintiff and makes a sexually-charged comment about the size of her chest**

3.5    As time went on, Chair Kruger continued to escalate his efforts to ostracize, bully, and harass Plaintiff, using the Covid pandemic as a convenient opportunity. Due to her deeply held beliefs, Plaintiff Allison elected not to wear a mask on campus during the pandemic, or to receive the Covid vaccine. Chair Kruger, on more than one occasion, would demean and joke to Allison's colleagues about her decisions regarding Covid masking and vaccination. In one instance, while Kruger handed-out masks to the other faculty, he proclaimed to them "We all know Amanda doesn't want one." On another day, Kruger entered Plaintiff's office, and despite his awareness that she declined to be vaccinated, passive aggressively complained to her about people who refused the Covid vaccine, telling her that such people were uneducated, stupid, hurt herd immunity, and exposed everyone. Plaintiff promptly told Chair Kruger to leave her office.

3.6    In February of 2021, desperate to put an end to Kruger's bullying behavior, Plaintiff filed a formal grievance against Chair Kruger for his on-going hostility towards her, including his attempts to humiliate her in front of colleagues over her decisions regarding Covid precautions. The university never provided a written response to her grievance, but Dean Maurer verbally asked Chair Kruger to apologize to Plaintiff for his conduct, which he did. However, it became clear that his apology was not sincere, as afterwards he continued and amplified his hostile actions and retaliation toward her.

3.7    Early in 2023, Chair Kruger made an unsolicited and unwelcomed sexual comment to Plaintiff about the size of her breasts, stating "Everyone knows you have the biggest chest in the department." Chair Kruger's comment left Plaintiff Allison in complete shock and humiliation. She remained quiet and walked off, as Kruger's sexually-charged comment left her emotionally distraught.

**A student leaves a negative comment in Allison's evaluation over another student's practical joke**

3.8    Shortly after Chair Kruger's comment to Allison about her having the biggest chest in the department, in March of 2023, an incident occurred in one of Professor Allison's classes, in which an anonymous student brought an unopened bottle of "MD 20/20" flavored wine into her classroom, prior to Allison's arrival into class that day, and put it on Allison's instructor desk at the front of the classroom. Possession of any alcohol on campus is prohibited by university policy. The incident was anonymously reported to Chair Kruger and the Lamar University Police Department ("LUPD"), accompanied by photographs of the wine bottle on Allison's desk. Plaintiff was questioned by LUPD about the incident. She explained that she was not involved in any way with the bottle, and did not know who had brought it. Plaintiff never received any conclusion about the incident from either LUPD or Chair Kruger.

3.9    In May of 2023, a student came to Plaintiff's office and revealed to her that he was the student who had put the bottle on her desk, and apologized for the incident and stated that he had been disciplined by the university as a result. Later that month, instructor course evaluations were released. An anonymous student had given a negative comment against Allison, citing the original allegations against her regarding the bottle, despite her name having been cleared. This student comment would later be brought up by Chair Kruger the following March to disparage Plaintiff in her annual evaluation, as detailed herein below.

**Chair Kruger refers to Plaintiff as looking "a little horny"**

3.10    By August of 2023, Plaintiff was hired as a full-time Instructor of Space Science. A few months later, on or about October 31, 2023, Plaintiff was walking out of her campus office on her way to teach class. As it was Halloween, Plaintiff was wearing ram's horns as a costume prop. Upon encountering Plaintiff, Chair Kruger once again made unsolicited and unwelcomed

sexual comments to her, telling Allison that she looked "really cute" and "some people might even say you look a little horny." Chair Kruger then stated that he was sorry and probably shouldn't have said that. Plaintiff, shocked and shaken up by Kruger's egregious conduct, told Kruger he absolutely should not have said that. Chair Kruger's latest sexual comment, which was now the third sexually-charged, unsolicited, and unwanted comment he had made to her, upset Plaintiff so much that she was unable to speak further. She ended up having to start class 10 minutes late while she recovered from her emotional distress enough to be able to get through teaching her class that day.

**Plaintiff is labeled as an unscientific "conspiracy theorist" and admonished in her annual evaluation**

3.11    Chair Kruger was clearly angered by Plaintiff's continued rejection of his sexual advances, and the fact that she had filed a formal grievance against him in the past. By that point, Kruger resolved to intensify his retaliation against Plaintiff by ending her career at Lamar University. On March 5, 2024, Plaintiff was called into a meeting with Kruger to go over her annual evaluation. Also present was Dean Maurer's administrative assistant, Xiangyang "Sunny" Lei. The presence of someone other than the chair and faculty member was not a normal practice for annual evaluation meetings.

3.12    At the meeting, Chair Kruger brutally attacked Plaintiff's character, her skill as an instructor, and her knowledge of her subject matter. Kruger accused Professor Allison of teaching "conspiracy theories" in her classes, including hosting a class discussion regarding the possible existence of life on other planets, and teaching that Relativity is a theory and not a law. He also brought up the negative student comment from May of 2023 regarding the bottle of flavored wine left on her desk, despite Plaintiff having already been cleared of any wrong-doing by the LUPD. Chair Kruger ignored Allison's glowing student success rates and the hundreds of positive

comments she received in her student evaluations, and instead focused almost entirely on the few negative student comments she received. None of Plaintiff's many positive accomplishments were acknowledged by Kruger, such as her service on the Faculty Senate and the Academic Issues Committee. After admonishing Professor Allison's character, leaving her in tears, Kruger attempted to inflict maximum emotional pain against her by failing to reveal that despite his rant over her performance, she had been given a high overall evaluation score, which was a 4.4 out of 5.0.

     3.13    Chair Kruger's intent to simply use his March 5, 2024, verbal evaluation meeting with Plaintiff as an opportunity to bully, harass, intimidate, and humiliate her in front of an audience (Sunny), became abundantly clear to Plaintiff three days letter. On March 8, 2024, Kruger emailed Plaintiff Allison informing her that he would not be using misleading wine-bottle student course evaluations from May, 2023, in her annual evaluation after all, because she was not yet a full-time instructor at the time those student evaluations were conducted. He pointed out that not including the May, 2023 student evaluations should raise her score, even though at that point he had not told her what her score was. Later that day, Plaintiff emailed Sunny Lei, requesting a meeting with her and Chair Kruger to discuss the emotional stress caused by Kruger's behavior at the March 5, 2024, annual evaluation meeting.

     3.14    On March 10, 2024, Chair Kruger finally emailed Plaintiff her score on her annual evaluation. In the same email, Kruger told Allison that because that day was the deadline, he needed her to immediately sign the evaluation form. Despite the score being a respectable 4.4 out of 5.0, Kruger had filled Plaintiff's annual evaluation with negative "hearsay" student comments (egregiously skewing the ratio of positive to negative comments), and had added his own commentary which took her comments during the March 5, 2024, meeting entirely out of context, including stating that she had "admitted to teaching conspiracy theories." Plaintiff informed

Kruger that she refused to sign the evaluation. Chair Kruger told Allison that she was required to sign the evaluation form to acknowledge receipt, but that she could appeal the evaluation to Dean Maurer if she desired.

3.15   Later that day, Plaintiff received an email from Sunny Lei cancelling the scheduled meeting (which had been scheduled to take place during Spring Break) wherein Plaintiff wanted to complain about Kruger's conduct at the March 5, 2024, annual evaluation meeting. At that point, it became apparent to Plaintiff that her confidentiality regarding the meeting had been breached, and that the university was not going to afford her a fair and neutral opportunity to complain about the chair's conduct. Plaintiff, feeling that she had no choice but to take matters into her own hands, emailed Chair Kruger that day, telling him that she wished to reschedule the meeting about his conduct with someone other than Sunny Lei. In that email, she also told Kruger that she wished to know why Ms. Lei was present at the March 5, 2024, annual evaluation meeting, and pointed out that he had humiliated her in front of Ms. Lei, that he had attacked her credibility as an instructor, that he had focused on unsubstantiated hearsay comments from students, and that he had attacked her character and intelligence in her field of study.

3.16   The next day, Dean Maurer reached out to Plaintiff, letting her know that Plaintiff was welcome to schedule a meeting with anyone in her office, given that the original meeting had been canceled. Maurer also urged Plaintiff to sign the evaluation. Plaintiff, under pressure from both her dean and chair, finally signed her evaluation form on March 12, 2024, but added "Signed Under Duress" next to her signature and a comment that she was only signing the form to acknowledge receipt, but that she did not agree with some of the comments in the evaluation. Allison also attached a letter of appeal to the evaluation. Chair Kruger acknowledged receipt of the signed evaluation and appeal letter, which he then forwarded to Dean Maurer.

**Having left her evaluation appeal unanswered, Lamar University ends Plaintiff's academic career**

3.17     Weeks went by, but Plaintiff still had not heard any feedback regarding her appeal of her annual evaluation. Then, despite Plaintiff's proven track record as an instructor, in a two-sentence letter by Dean Maurer dated April 3, 2024, Dean Maurer notified Plaintiff Allison that her annual term contract would not be renewed for the 2024-2025 academic year. Dean Maurer also sent a second letter, notifying Professor Allison that the university was also cancelling her summer classes she had been scheduled to teach and that were already filling with students (thereby depriving her of her additional summer income). Lamar also cancelled the summer camp she was scheduled to teach in addition to her other summer classes. This cost Plaintiff an additional $1,500 she was set to receive on top of her other summer pay. Dean Maurer's letter came without any prior notice and without any rationale for the non-renewal, aside from "departmental needs." Plaintiff's pending appeal of her evaluation was never resolved prior to her non-renewal, and she was not provided a chance to respond to the non-renewal before her forced last day of employment on May 31, 2024.

**Plaintiff formally grieves her non-renewal, and the retaliation against her continues**

3.18     On April 16, 2024, Professor Allison notified Lamar University that she had secured union representation through the Texas Conference of the AAUP-AFT ("TX-AAUP"). On April 17, 2024, Plaintiff filed a formal grievance directly to Lamar University President Jaime Taylor ("President" or "President Taylor") against Chair Kruger, Dean Maurer, Provost/Vice President for Academic Affairs Daniel Brown ("Provost" or "Provost Dan Brown"), and against President Taylor himself regarding her non-renewal and the events leading up to it. Plaintiff was informed that her grievance, despite being academic in nature, was received by Dr. Hector Flores, Lamar University's Chief of Operations and Chief of Police, serving as the Grievance Intake

Officer. The grievance was assigned to Associate Provost Gene Theodori ("AP Theodori") to be heard in an informal capacity.

3.19   Just days after Plaintiff's April 17, 2024, original formal grievance against him was filed, on April 22, 2024, Chair Kruger took further retaliatory action against Plaintiff; this time of a physical nature. Upon seeing Plaintiff exit the nearby bathroom and head towards the departmental office as he was unlocking it, Chair Kruger waited until Plaintiff approached to enter the office, and then deliberately and forcefully pushed the departmental office door back on Plaintiff as she tried to walk through, nearly slamming it in her face. Plaintiff Allison reported the incident to Human Resources ("HR") the next day, and at HR's suggestion, filed a police report with LUPD.

3.20   On May 13, 2024, TX-AAUP wrote to AP Theodori on behalf of Plaintiff, formally objecting to Hector Flores serving as an academic Grievance Intake Officer and accepting AP Theodori's invitation for an informal meeting on May 21, 2024, to hear the April 17, 2024, grievance, despite the university's refusal to provide Plaintiff with a formal due process hearing. AP Theodori responded in an email on May 17, 2024, copied to President Taylor and others, denying TX-AAUP's objection to Hector Flores serving as the Grievance Intake Officer, and reiterating the university's stance that Plaintiff's request for a formal due process hearing over her non-renewal was denied:

> I also wanted to clarify that you are correct to note that the procedure provided for grieving a non-renewal of a faculty contract at the end of a contract period does not involve a due process hearing. Following this meeting and my consideration of the materials you provide, I will render a finding regarding whether Ms. Allison has established a prima facie case of a violation of her rights under federal or state law and a recommendation, if any. Though any recommendation I may have would not be binding on the University, my finding, and the administration's decision regarding any recommendation, will be final. There is no further due process or appeal available in regard to a termination of employment at the end of a contract period.

Theodori email, May 17, 2024.

3.21 On May 20, 2024, TX-AAUP submitted to President Taylor and AP Theodori an addendum to Plaintiff's April 17, 2024, grievance over her non-renewal, adding Lamar University as a named party and explaining Plaintiff's narrative and complaints in greater detail. Specifically, Plaintiff alleged in her grievance that in perpetrating a hostile work environment, labeling her a conspiracy theorist for discussing possible life on other planets and the difference between theory and law with her students, and in non-renewing her appointment and removing her summer classes, the named parties and Lamar University 1) deprived her of her property interest without due process; 2) infringed on her Academic Freedom, and 3) ignored and then retaliated against her for filing prior grievances, thereby infringing on her First Amendment right to petition a governing body for a redress of grievances.

3.22 The next day, on May 21, 2024, Plaintiff, accompanied by two designees from TX-AAUP, met remotely with AP Theodori, appealing her non-renewal in what the university labeled as an informal meeting. Also present at the meeting was Senior Associate Provost Dr. Samuel Jator, who did not speak during the meeting. In the meeting, Plaintiff Allison, in conjunction with her representatives, reiterated her complaints against Lamar University, Chair Kruger, and Dean Maurer. Additionally, during the meeting, Allison, through her representation, expressed that she had been a victim of sexual harassment by Chair Kruger. At the conclusion of the meeting, AP Theodori stated that he could not give an exact timeline of when he would make a decision regarding Plaintiff's appeal, but that it would be "soon."

3.23 One day after the meeting with AP Theodori, on May 22, 2024, Plaintiff finally received a written response from Dean Maurer, denying her March 12, 2024, appeal of her March 5, 2024, annual evaluation. Having received no communication from AP Theodori, despite his promise that his decision on Plaintiff's non-renewal appeal would come "soon," TX-AAUP reached out to AP Theodori via email on June 3, 2024. In that email, Texas-AAUP restated that

Plaintiff had requested the university provide her a formal appeal hearing tribunal over her non-renewal, per Texas State University System ("TSUS") Rules and Regulations Chapter V Section 4.54 and the Lamar Faculty Handbook. Also in that email, TX-AAUP objected to Dean Maurer's May 22, 2024, denial of Plaintiff's appeal and the fact that the denial of her appeal did not occur until after Plaintiff met with AP Theodori for her formal grievance to be heard - a grievance in which Dean Maurer was one of the named individuals. On behalf of Plaintiff, TX-AAUP further complained to AP Theodori that the sudden release of Dean Maurer's denial of Allison's evaluation appeal was retaliatory for Professor Allison having named Dean Maurer in her non-renewal grievance and having presented that grievance to AP Theodori just the day before.

3.24  AP Theodori issued Plaintiff a letter on June 11, 2024, detailing his decision on her formal grievance, in which he denied all of Plaintiff's allegations and any culpability of Lamar University. In his letter, he reiterated that Plaintiff would not be provided any detailed rationale for her non-renewal, nor would she receive any due process hearing. TX-AAUP promptly replied to Theodori's letter, pointing out multiple inaccuracies in the letter and detailing that Lamar University infringed on Plaintiff's right to representation in its assessment of her claims and in its conduct.

**Lamar strikes a final retaliatory blow against Plaintiff**

3.25  Lamar University attempted a final retaliatory blow to Plaintiff Allison in the days and weeks following her meeting with AP Theodori. By then, Plaintiff, a single mother of two minors, knew she would need to quickly access funds from her Teacher Retirement System ("TRS") account, given that she would no longer be receiving a paycheck. On June 7, 2024, Plaintiff contacted TRS, letting them know she needed to pull funds from her account. TRS affirmed it would begin processing her request, which included verifying with Lamar University her dates of employment and non-renewal. Three days later, on June 10, 2024, Plaintiff checked

the status of her application for fund withdraw on the TRS website. She was surprised to see that the processing of her request for retirement refund had been cancelled. The next day, she called TRS to inquire what had happened. TRS informed Plaintiff that Lamar University had told TRS that Allison was still employed, and that her last day of employment would be August 31, 2024, despite Allison's official last day having been May 31, 2024. Plaintiff Allison informed TRS that Lamar had made a mistake, and TRS reopened the request for refund.

3.26   On June 17, 2024, Allison again logged into the TRS website to check the status of her retirement refund. She was surprised to learn that her second request had also been cancelled. She called Lamar University's HR department. HR informed Allison that they had again been told by Chair Kruger that her last day of employment was August 31, 2024, instead of the May 31, 2024, date. At that point it became obvious that Chair Kruger and Lamar were intentionally refusing to disclose that her employment ended on May 31, 2024. Plaintiff and her union representative talked together with TRS, wherein TRS explained that there was nothing that could be done until the corrected information was received from Lamar University. It took two letters from Plaintiff's attorney to Lamar University's General Counsel, and multiple weeks before Lamar University finally sent accurate information to TRS. Plaintiff finally received her retirement funds on July 26, 2024, and by then was already unable to fully pay her bills and had already had to pay multiple hospital bills out-of-pocket because Lamar University ended her medical insurance coverage several months early.

3.27   Plaintiff Amanda Allison endured years of targeting, humiliation, bullying, sexual harassment, and retaliation by Chair Kruger, supported by Lamar University and members of its administration, culminating in a complete destruction of her academic career. As a result of Defendant's actions and the financial harm, emotional stress, reputational harm, and mental anguish she has experienced by Defendant's wrongful actions, Plaintiff fell into the deepest

depression of her life. Since her wrongful non-renewal by Defendant, Allison lost over 40 pounds in under three months, as her ability to properly eat was severely affected. Plaintiff's hair began falling out, and she has been unable to pay all of her bills.

    3.28    On account of Lamar's actions, Plaintiff has suffered significant reputational harm, which has negatively impacted her ability to find new employment in her geographic area, despite her best efforts to do so. She is unable to attain work outside of her current geographic area because (1) she shares custody of her two teenage children with a former spouse, and accordingly has a court order to not move out of her resident Orange County; and (2) when her house was flooded in 2015 by Hurricane Harvey, Allison received a state grant for the rebuilding of her home - that grant mandates that she must reside in her rebuilt home until 2026. Thus, Plaintiff's prospects for obtaining gainful employment any time in the near future are grim.

    3.29    At the time of her non-renewal by Defendant, Plaintiff had been on the Public Service Forgiveness Plan (PSLF) through the Department of Education, which would have forgiven her student loans after 10 years of serving as a full-time Instructor. Although Plaintiff's full-time employment for a decade had been teaching at Lamar, until 2023 she had taught a full-time load as an adjunct. Only in 2023 did she become a full-time instructor under a term contract. Therefore, Plaintiff was just one year into the PSLF program when Lamar wrongfully ended her employment, thereby terminating Plaintiff's ability to remain on PSLF. As a result, her over $170,450 in student loan debt will never be forgiven, causing Plaintiff further financial harm. On top of this, as a full-time faculty member of Lamar University, her teenage son and daughter would have become eligible to attend Lamar University for free. As a single mother, Plaintiff relied on this benefit of her employment in order for her two sons to attend college, because she would not be able to support their college educations otherwise. As a result of Defendant's actions, Plaintiff Allison is now unable to support her children's educational futures.

3.30    Plaintiff was never provided with good cause, any real rationale, or any formal procedural due process prior to Defendant ending her academic career and depriving her of the classes she was assigned for the following summer and fall, as well as the summer camp she was scheduled to teach, and the associated income she was already set to receive. Her multiple petitions to Lamar University to put an end to Chair Kruger's years-long wrongful actions against her were always ignored or denied by Lamar University and its administrative designees (including Dean Maurer, Provost Dan Brown, AP Theodori, and President Taylor), and in all instances, Plaintiff faced retaliation for her efforts to improve her situation. That retaliation ranged from deliberate efforts to create a hostile work environment, to sexual harassment and subsequent retaliation for rebuking sexual advances, to termination of her academic career, to efforts to maximize her pain by blocking her ability to obtain money from her retirement just to get by in the wake of her dismissal.

3.31    Plaintiff Allison sues now for Lamar University's violation of her rights under Title VII and for deprivation of her property and liberty interests under the First (Academic Freedom, Freedom of Speech, and Right to Petition) and Fourteenth Amendments of the United States Constitution. As set forth below, Allison has filed her charge of discrimination and retaliation with the EEOC under Title VII, and has received her notice of right to sue, indicating that she has exhausted her administrative remedies.

## IV.    CAUSES OF ACTION

4.1    *Alternative Pleadings*.  To the extent necessary, each of the claims set forth below is pleaded in the alternative, and all allegations contained in each count below are incorporated into each other count by this reference. Further, to the extent necessary, all allegations set forth above in Section III. Factual Background (paragraphs 3.1 through 3.31) of this Complaint are

hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

*42 U.S.C. § 2000e et seq.: Discrimination and Retaliation on the Basis of Sex*

**Count 1: Discrimination on the basis of sex under Title VII**

4.2     Title VII of the Civil Rights Act of 1964 prohibits discrimination based on sex, race, color, religion, disability, ethnicity, and national origin. *See* 42 U.S.C. §2000e-2(a)(1).

4.3     On or about August 22, 2024, Allison signed and submitted an EEOC charge against Lamar University for (1) discrimination on the basis of sex, and for (2) retaliation. Her charge was assigned EEOC Number 832-2024-00289.

4.4     On September 19, 2024, Allison received her right to sue within ninety days on her claim under Title VII and has timely brought this lawsuit, within ninety days of her receipt of the notice letter.

4.5     Incorporating all of the allegations set forth in Section III of this Complaint, Defendant has, through its employees, discriminated against Plaintiff in her compensation, in the terms, conditions, and privileges of her employment, and in terminating her employment. This has caused damage to Plaintiff for which Plaintiff Allison, having exhausted her administrative remedies, now sues.

**Count 2: Retaliation for Protected Activity, including opposing and reporting practices which violate Title VII**

4.6     Title VII also prohibits harassment and retaliation by an employer against an employee who opposes an employment practice that violates Title VII. *See* 42 U.S.C. § 2000e-3(a). As set forth above, Defendant experienced multiple instances of sexual harassment by Chair Kruger and multiple instances of retaliation by him for Plaintiff rebuking his unsolicited and unwanted sexual advances. Plaintiff also experienced retaliation by Lamar University, through

Lamar's administrators, for reporting the sexual harassment Allison experienced at the hand of Chair Kruger. The reporting was protected activity pursuant to Title VII, and by retaliating against her for such reporting, Lamar violated Title VII.

4.7     The harassment and retaliation Plaintiff experienced by Lamar University and its administrators, culminating in the non-renewal of her employment and deprivation of her summer classes, have caused actual damages to Plaintiff Allison, for which, having exhausted her administrative remedies, she now sues, seeking all relief permitted under Title VII.

## V. REQUESTED RELIEF

5.1     As the direct and/or proximate result of Defendant Lamar University's actions complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages against Lamar University, including but not limited to injunctive relief and actual and/or economic damages, nominal damages, if applicable, back pay, front pay, damages for mental anguish and emotional distress, equitable relief reinstating her as full-time Instructor of Space Science and restoring her salary and benefits, compensatory damages in an amount within the jurisdictional limits of this Court, and all other relief to which she may be entitled.

## VI. FEES, COSTS, AND INTEREST

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent her in connection with this matter, and has agreed to pay the law firm its reasonable and necessary attorneys' fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiff seeks to recover her reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 2000e-5(k).

6.2     Plaintiff is also entitled to and seeks to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  CONDITIONS PRECEDENT

7.1     All conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred.

## VIII.  DEMAND FOR JURY TRIAL

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial and has tendered, or will tender, the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, Plaintiff recovers judgment against Defendant and be awarded:

(a)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)     her litigation expenses and costs, including but not limited to her attorneys' fees and costs and any applicable expert fees;

(c)     costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)     such other and further relief, both general and special, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
FRANK HILL
Texas Bar No. 09632000
fhill@hillgilstrap.com
STEFANIE M. KLEIN
Texas Bar No. 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas 76013

***COUNSEL FOR PLAINTIFF
AMANDA ALLISON***